IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EARNEST BLACK, | ) | CASE NO. 1:13 CV 229 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Earnest Black seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").[1] The parties have consented to my jurisdiction.[2]

---

[1] ECF # 1. Technically, Black filed, and the ALJ purported to rule on, both a DIB and an SSI application. Because Black's insured period expired in 2007, before an unfavorable decision on an earlier DIB claim, only the SSI claim now pends for judicial review, as conceded by Black's counsel during oral argument.

[2] ECF # 13.

The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Black had severe impairments consisting of depression, borderline intellectual functioning, and bilateral hearing loss.[11]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Black's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the

---

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 5.

[6] ECF # 11.

[7] ECF # 19 (Commissioner's brief); ECF # 18 (Black's brief).

[8] ECF # 19-1 (Commissioner's charts); ECF # 18-1 (Black's charts).

[9] ECF # 17 (Black's fact sheet).

[10] ECF # 22.

[11] ECF # 10, Transcript ("Tr.") at 13.

claimant can perform work without significant auditory comprehension and verbal communication. He must avoid concentrated exposure to noise. The claimant is limited to simple, repetitive work with no high production quotas or paced work. He is limited to superficial interaction with co-workers and occasional interaction with the public without negotiation or confrontation. The claimant cannot work around dangerous machinery or unprotected heights. The claimant cannot engage in commercial driving.[12]

Based on that residual functional capacity, the ALJ found Black capable of his past relevant work as a commercial cleaner and, therefore, not under a disability.[13]

Alternatively, based on an answer to a hypothetical question posed to the vocational expert ("VE") at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Black could perform.[14] The ALJ, therefore, also found Black not under a disability at step five.[15]

Black asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Black presents the following issues for judicial review:

- Does the application of *res judicata* support the ALJ's adoption of the residual functional capacity finding from an earlier, unfavorable decision on an SSI claim?

---

[12] *Id.* at 16.

[13] *Id.*

[14] *Id.* at 20.

[15] *Id.*

- Did the ALJ properly analyze, weigh, and articulate with respect to the opinions of the medical expert, Dr. Plotkin, and the consulting examining psychologist, Dr. House?

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

### A.    Standards of review

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[16]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[16] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

-4-

survives "a directed verdict" and wins.[17] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[18]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.      The ALJ's decision is supported by substantial evidence.**

The Commissioner denied an earlier SSI claim filed by Black based upon an ALJ's decision of August 14, 2008.[19] In denying the current application, the ALJ made a finding that Black had failed to submit "new and material evidence that would warrant greater restriction in capacity."[20] He, therefore, adopted the RFC from the earlier decision based on *res judicata* as interpreted in *Drummond v. Commissioner of Social Security*.[21]

The transcript on this new application contains a significant amount of relevant, new medical information including the testimony of Dr. Franklin Plotkin, a medical expert;[22] an

---

[17] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[18] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[19] Tr. at 94-104.

[20] *Id.* at 17.

[21] *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997).

[22] Tr. at 75-79.

evaluation by Dr. David House, a consulting examining psychologist;[23] treatment records;[24] and new state agency reviewing psychologist evaluations.[25] At the oral argument counsel for the Commissioner admitted that all of these records are new, generated after the last ALJ's decision, and are material in that they bear upon Black's condition during the period of the application at issue. Counsel agreed that this case can be evaluated for judicial review by the standard of whether substantial evidence on this record supports the ALJ's RFC finding, and the step four and step five findings based on that RFC finding, as set out in this decision.

That being the case, the controlling issue is the second one regarding the weight assigned to the opinions of Drs. Plotkin and House and the ALJ's analysis in support of those weight assignments. In the light most favorable to Black, Dr. Plotkin testified that Black's mental impairments equal the listing of psychosis, schizophrenia.[26] He also testified, however, that this impairment is reasonably well controlled with Abilify.[27] He further testified that because of his impairments, Black would be off task more than 20% of the time and that medication to address his schizophrenia might make him sleepy and drowsy.[28]

---

[23] *Id.* at 349-57.

[24] *Id.* at 279-90, 303-05, 325-26, 340-44, 389-91, 393-416, 418-25, 431-60, 539-49.

[25] *Id.* at 358-74.

[26] Tr. at 76-77.

[27] *Id.* at 77.

[28] *Id.* at 78.

Adding this 20% off task limitation to the RFC hypothetical, the vocational expert testified that Black would be unemployable.[29]

Dr. House opined marked limitations in the ability to withstand stress and pressure associated with day-to-day work, marked limitation on ability to relate to fellow workers and supervisors, and a marked limitation in insight into his current situation and overall judgment.[30] Counsel for Black and the Commissioner agreed that if the opinions of Drs. Plotkin and House were assigned significant weight, Black would be disabled.

The ALJ assigned these opinions little weight, however.[31] Although his blanket explanation for this weight is that the opinions are contrary to the weight of the medical evidence, he discusses in his opinion how Black's mental condition was well controlled through medication and his hearing deficits adequately addressed with hearing aids.[32] When he was compliant with these treatment measures, he functioned well. The episodes of decompensation reflected in the medical records, his hospitalization in February of 2009[33] and July of 2010,[34] occurred when he was noncompliant with prescribed medications.[35] The

---

[29] *Id.* at 85.

[30] *Id.* at 355.

[31] *Id.* at 19.

[32] *Id.* at 18, 19.

[33] *Id.* at 303-05.

[34] *Id.* at 397-98.

[35] *Id.* at 389-91.

-7-

Commissioner argues that the control of his impairments with prescribed treatment and his deterioration when not compliant supports the discounting of the opinions of Drs. Plotkin and House and the giving of great weight to the opinions of the state agency reviewing psychologist, who opined, based on the new evidence, that the former RFC was appropriate.[36]

This raises the issue of noncompliance as a result of the underlying condition as opposed to noncompliance because of a willful decision by the claimant. Black cites and argues for the proposition that Black's schizophrenia should excuse his noncompliance, citing *White v. Commissioner of Social Security*.[37]

A claimant's argument that his severe mental impairment, such as schizophrenia or bipolar disorder, prevents him from compliance with directions for taking prescribed psychiatric medications presents challenges on judicial review. 20 C.F.R. § 404.1530(a) requires a claimant to follow treatment prescribed by the physician if that treatment can restore ability to work. Under 20 C.F.R. § 404.1530(b) failure to follow prescribed treatment without a good reason will result in a finding of not disabled. 20 C.F.R. § 404.1530(c) requires the ALJ to consider the claimant's mental limitations when deciding if acceptable reason exists for failing to follow prescribed treatment.

---

[36] *Id.* at 19.

[37] *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009).

As Black points out,[38] *White*[39] provides a useful starting point for understanding the law applicable to the interpretation of these regulations. In *White*, the administrative record contained a significant and unexplained gap in the mental health treatment of the claimant.[40] The ALJ found that after the claimant resumed mental health treatment, she was disabled for a closed period.[41] The claimant argued that this disability extended back into the period when, according to the record, she had received no treatment.[42] In that context, the Sixth Circuit observed that "ALJs must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil state of mind. For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself."[43] The court cited the Eighth Circuit's decision in *Pate-Fires v. Astrue.*[44] The Sixth Circuit found that the ALJ's decision not to extend the disability period back into the time when the claimant received no treatment had the support of substantial evidence because "there is no evidence in the record explaining White's failure to seek treatment during this half year gap."[45]

---

[38] ECF # 18 at 18.

[39] *White*, 572 F.3d 272.

[40] *Id.* at 283.

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009).

[45] *White*, 572 F.3d at 284.

-9-

*White* did not involve a claim like that made here of failure to take prescribed medication because of the symptoms of the mental disorder. The Eighth Circuit case cited by the *White* court, *Pate-Fires v. Astrue*, did. In that decision, the Eighth Circuit specifically addressed the causal link between the mental impairment and the failure to take prescribed medication.

> [F]ederal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the 'result' of [the] impairment [itself] and, therefore, neither willful nor without justifiable excuse.
>
> * * *
>
> Courts considering whether a good reason supports a claimant's failure to comply with prescribed medication that recognize psychological and emotional difficulties may deprive a claimant of the "rationality to decide whether to continue treatment or medication."[46]

In *Pate-Fires*, the court concluded that the ALJ's failure to find justifiable noncompliance reversible error because the treating psychiatrist had opined that the mental illness had caused non-compliance with recommended medication and treatment.[47]

In a later decision, the Eighth Circuit cautioned that a finding of justifiable noncompliance with prescribed medication must have a foundation in "evidence expressly linking [the claimant's] mental limitations to such repeated noncompliance."[48]

---

[46] *Pate-Fires*, 564 F.3d at 945 (citations omitted).

[47] *Id.* at 943, 946.

[48] *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010).

-10-

Against the backdrop provided by these authorities, two recent decisions from this District have brought the question of justifiable noncompliance with prescription medication as a consequence of the effects of a severe mental impairment into sharper focus. In *Ross v. Commissioner of Social Security*,[49] the Court discussed the Eighth Circuit authority on noncompliance by mentally ill claimants.[50] The decision acknowledged that a noncompliance with medication could be justified by mental illness but that there must be some evidence linking the mental illness to the noncompliance.[51] It declined to find justifiable noncompliance because the claimant in that case did not provide evidence linking mental illness to noncompliance.[52]

In *Smith v. Astrue*,[53] the Court acknowledged the *White* decision of the Sixth Circuit but stated that it did not construe *White* as "establishing a *per se* rule that the existence of any mental impairment(s) constitutes an acceptable reason for failure to follow prescribed treatment under 20 C.F.R. § 416.930(c)."[54]

---

[49] *Ross v. Comm'r of Soc. Sec.*, No. 1:12 CV 543, 2013 WL 1284031 (N.D. Ohio Mar. 26, 2013).

[50] *Id.* at *13.

[51] *Id.*

[52] *Id.*

[53] *Smith v. Astrue*, 1:12 CV 831, 2012 WL 6607007 (N.D. Ohio Dec. 18, 2012).

[54] *Id.*, at *13.

Accordingly, to establish a severe mental impairment as an acceptable reason excusing a claimant's adherence to a medical regimen including prescription psychiatric medications, the record must contain evidence expressly linking noncompliance with the severe mental impairment. The justifiability of noncompliance is a step four determination as to which the claimant bears the burden of proof.[55]

The requisite evidence of that link will preferably appear in an opinion or assessment by a medical source. Where such evidence does not exist or is unclear, counsel for claimants should request a consultative examination or testimony by a medical expert addressed expressly to the issue of a link between the mental impairment and failure to take prescription medication. Although a referral for a consulting examination and the calling of a medical expert remain within the discretion of the ALJ,[56] a serious argument can be made under certain circumstances that refusal to obtain a further opinion constitutes reversible error given the Sixth Circuit's admonishment in *White* that "a mentally ill person's noncompliance with treatment 'can be ... a result of the mental impairment itself and, therefore, neither willful nor without justifiable excuse'...."[57] Further, a claimant may strengthen the case for a reversal by raising the denial of a request for a consulting examination or a medical expert before the

---

[55] *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

[56] 20 C.F.R. §§ 416.917 and 416.927(e)(w)(iii); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001); *Kmetko v. Comm'r of Soc. Sec.*, No. 5:12CV783, 2013 WL 4785687, at *2 (N.D. Ohio Sept. 6, 2013).

[57] *White*, 572 F.3d at 283, citing *Pate-Fires*, 564 F.3d at 945.

-12-

Appeals Council, but the failure to raise that issue in a request for review by the Appeals Council does not constitute a waiver thereof for purposes of judicial review.[58]

Neither the testimony of Dr. Plotkin, nor the evaluation of Dr. House, provides the evidentiary link between Black's mental impairment and his noncompliance with prescribed medication. Dr. Plotkin makes references to Black getting "good results" from medication[59] and to his psychosis being "well controlled" by medication.[60] He also notes "trouble controlling impulses" off medication.[61] He does not, however, address the mental impairment/noncompliance link. Dr. House's report noted that Black "takes the medications as directed."[62] He did not, therefore, address noncompliance.

Additionally, I have reviewed the extensive treatment notes included in the new evidence placed in the transcript for this application. Although that evidence contains references to compliance and noncompliance, I found nothing addressing the linkage question.

This is a difficult case involving a claimant who admittedly has a severe mental impairment that has existed for a substantial time period. He has experienced periods of

---

[58] *Sims v. Apfel*, 530 U.S. 103, 112 (2000).

[59] Tr. at 75.

[60] *Id.* at 77.

[61] *Id.* at 75.

[62] *Id.* at 351.

control with medication[63] and decompensation off medication.[64] But for purposes of this step four inquiry, at which Black bears the burden of proof, there must be evidence that his mental impairment caused his failure to take the prescribed medication. This transcript does not contain evidence of that causal link.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Black had no disability. Accordingly, the decision of the Commissioner denying Black supplemental security income is affirmed.

IT IS SO ORDERED.

Dated: December 26, 2013                              s/ William H. Baughman, Jr.
                                                      United States Magistrate Judge

---

[63] *Id.* at 279-90, 303-04.

[64] *E.g.*, *id.* at 303-04, 397.

-14-